731 So.2d 132 (1999)
Paul McDONALD, Appellant,
v.
Cheryl McDONALD n/k/a Cheryl Cramner, Appellee.
No. 98-3249.
District Court of Appeal of Florida, Fourth District.
April 21, 1999.
A. Thomas Connick of A. Thomas Connick, P.A., and Boutwell and Connick, Deerfield Beach, for appellant.
Howard S. Friedman of Fischler & Friedman, P.A., Ft. Lauderdale, for appellee.
WARNER, J.
The parties' final judgment of dissolution of marriage incorporated a settlement agreement. With regard to the husband's municipal pension, the settlement agreement provided that the wife was awarded half of its accumulations during the marriage, and "if a QDRO [Qualified Domestic Relations Order] can be entered upon the pension, it shall be done." Neither the agreement nor the final judgment made any alternative provision if a QDRO was unavailable. As the wife's attorney later learned, a QDRO is unavailable for a municipal pension, a point on which the parties agree. Nevertheless, the pension plan would honor an alternative order, which would be the functional equivalent of a QDRO. The wife presented a stipulated order to that effect, but the husband refused to agree with it. The wife moved to compel the husband to sign the agreement, contending that the arrangement, while not technically a QDRO, was consistent with the parties' intent. The husband appeals the court's order granting the post-judgment motion to compel. We affirm.
The husband contends that the court rewrote the property settlement agreement by requiring him to enter into the alternative order securing payment to the wife of her portion of the pension. He relies on Richter v. Richter, 666 So.2d 559, 561 (Fla. 4th DCA 1995), in which this court stated:
[m]oreover, a separation agreement is a contract subject to interpretation like any other contract. Fecteau v. Southeast Bank, N.A., 585 So.2d 1005, 1007 (Fla. 4th DCA 1991). In the absence of *133 ambiguity, the parties' intent must be discerned from the four corners of the document. Id. Where a contract is clear and unambiguous in its terms, the court may not give those terms any meaning beyond that expressed. Id. Thus, the language itself is the best evidence of the parties' intent, and its plain meaning controls. Id.

The problem with the application of the foregoing principle to this case is that here there appears to be an ambiguity in the final judgment and the property settlement agreement. While it unambiguously states that if a QDRO can be entered, it shall be, the settlement agreement does not address what measures may be taken if a QDRO is unavailable. Thus, it does not provide for other means by which the wife may secure that property awarded to her in the final judgment.
As we said in DeSantis v. DeSantis, 714 So.2d 637, 638 (Fla. 4th DCA 1998):
[a] QDRO is, in pertinent part, a "domestic relations order ... which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i). In Kahn v. Kahn, 801 F.Supp. 1237, 1244 (S.D.N.Y. 1992), aff'd, 2 F.3d 403 (2d Cir.1993), the court stated that:
The object of REA [Retirement Equity Act, which authorizes the issuance of a QUADRO] was to better protect women who had contributed to their marriage's [sic] financial security through their work in the home, anticipated sharing in the pension income received upon their husband's [sic] retirement, but were left inescapably dependent on their husband's [sic] earnings, at the mercy of death or divorce.
(emphasis added). Thus, a QDRO is intended to protect one spouse's right to the other's pension or profit sharing plans by recognizing that spouse's entitlement to a portion of the future payments.
We perceive two possible interpretations of the instant final judgment. It could mean that the husband agreed to entry of a QDRO, and only a QDRO, to secure the wife's portion of his pension. On the other hand, an equally reasonable interpretation of the agreement is that the parties desired entry of a domestic relations order by the trial court to recognize and protect the wife's entitlement to her portion of the pension. An order which is the functional equivalent of a QDRO secures those rights to the wife and places the husband in no different position than if an actual QDRO were entered.
Where there are two reasonable interpretations of an agreement, the question is one for the trier of fact. See Fecteau v. Southeast Bank, N.A., 585 So.2d 1005, 1007 (Fla. 4th DCA 1991); Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980). Here, on the motion to compel, the trial court had to determine which interpretation of the property settlement and final judgment was intended by the parties. The trial court, after a hearing on the matter, granted the motion to compel and in so doing, necessarily concluded that the intent of the final judgment was to secure the wife's rights to her portion of the pension. The husband has shown no abuse of discretion.
Affirmed.
GUNTHER and STEVENSON, JJ., concur.